# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a non-profit corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PACIFIC COAST ENERGY COMPANY LP, a limited partnership,<br><br>　　　　Defendant. | Case No. 2:18-cv-06065-CBM-FFMx<br><br>**[PROPOSED] CONSENT DECREE** |

## CONSENT DECREE

WHEREAS, Plaintiff Environmental Defense Center ("EDC") is a non-profit public benefit corporation and law firm dedicated to the preservation and enhancement of the local environment primarily within Ventura, Santa Barbara, and San Luis Obispo Counties through education, advocacy, and legal action;

WHEREAS, Defendant Pacific Coast Energy Company LP ("PCEC") is a limited partnership that operates the Orcutt Hill Facilities which consist of onshore crude oil and natural gas production, processing, storage, and transfer facilities located in the Orcutt Oilfield south of Orcutt in the northern portion of Santa Barbara County, California ("Facility").  EDC and PCEC are collectively referred to herein as the "Parties";

WHEREAS, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination

System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §1342;

WHEREAS, the Permit includes the following requirements for all permittees, including PCEC: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce the discharge of pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on April 17, 2018, EDC served PCEC, the Administrator of the Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Central Coast Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit ("60-Day Notice") under Sections 1365(a)(1) and 1365(b)(1)(A) of the Clean Water Act, alleging violations of the Act and the Permit at the Facility;

WHEREAS, EDC filed a complaint ("Complaint") against PCEC in the United States District Court, Central District Court of California on July 12, 2018, entitled

*Environmental Defense Center v. Pacific Coast Energy Company LP* (Case No. 2:18-cv-06065-CBM-FFM);

WHEREAS, EDC contends in its 60-Day Notice and Complaint that, among other things, PCEC has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

WHEREAS, PCEC denies all allegations set forth in the 60-Day Notice and Complaint;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of EDC's claims or any admission by PCEC of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full EDC's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.    COMMITMENTS OF PCEC

1.    PCEC agrees to the following terms and conditions in full and complete satisfaction of the claims covered by this Consent Decree.  PCEC has implemented or shall implement structural and non-structural BMPs, as described more fully below.

2.    **Road Network Improvements:**  No later than December 31, 2019, PCEC shall implement Best Management Practices ("BMPs"), as agreed upon by the Parties and listed below.  PCEC shall continue roadway maintenance as necessary to maintain full compliance with the General Permit.

The BMP locations are identified by the GPS coordinate locations at the

Facility, specified in the following table.

| GPS Coordinate Location / Site Name | Action |
| --- | --- |
| 34.823051, -120.418856 / Newlove 70 Water Bar | Install water bar with rip-rap to reduce roadway erosion |
| 34.821539, -120.417077 / Newlove 108 Water Bar | Install water bar with rip-rap to reduce roadway erosion |
| 34.839131, -120.409619 / Pinal Culvert 1 | Install culvert w/ rip-rap to reduce roadway erosion |
| 34.839003, -120.411761 / Pinal Swale | Install swale w/ rip-rap to reduce roadway erosion |
| 34.827205, -120.406535 / Newlove Shoulder Rip-rap 1 | Install rip-rap on road shoulder to minimize roadway erosion |
| 34.827793, -120.420487/ Cal Coast Road Shoulder Rip-rap | Install rip-rap on road shoulder to minimize roadway erosion |

Within fourteen (14) days of each of the above road network improvements, PCEC shall e-mail EDC digital photographs confirming said improvements.

3.    PCEC has regraded the mouth of the well pad located north of the Squires 34 Sampling Location 9 to ensure no storm water that falls at the mouth runs off to the road.  Photos of this improvement are attached hereto as Exhibit A.

4.    PCEC shall include the list of pads, Pods, and road stretches and the illustrated schematics included in the 2018 PCEC Berm Evaluation (i.e., pages 1 through 243 of the Evaluation) as an attachment to the SWPPP.

5.    **Storm Water Monitoring.**

a.    To verify the performance of the BMPs installed in the area, PCEC shall add an additional sampling location at the base of the truck loading area located proximate to the Pinal LACT Unit, just above the Pinal Tank Facilities sampling location (shown in the figure attached hereto as Exhibit B).

b.　　PCEC shall clarify in its Monitoring Implementation Plan that it will collect, analyze, and subsequently report on the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") for any sample(s) of any storm water discharge during a qualifying storm event from the first well pad or Pod to discharge in each drainage area at the Facility, even if that well pad or Pod is not a defined discharge location in the SWPPP. Sampling reports shall indicate the assigned numeric identifier for each pad or POD at which a sample is taken. The SWPPP maps shall be updated to include the assigned numeric identifier for each pad and POD in order to identify the location of samples taken at the Facility.

6.　　**Amendment of Storm Water Pollution Prevention Plan.**  Within thirty (30) days of the Effective Date of this Consent Decree, PCEC shall amend the Facility's SWPPP as follows to incorporate all changes, improvements, sample log forms, and BMPs set forth in or resulting from this Consent Decree.

a.　　PCEC shall ensure that all maps, tables, and text comply with the requirements of the Permit or other applicable regulatory standard.

b.　　PCEC shall revise, as necessary, the SWPPP to describe all structural and non-structural BMPs (e.g., check dams, water bars, rip rap, hay bales, etc.), provide details of the measures to be installed including the locations of all BMPs, discuss how the BMPs will be maintained, and discuss why such BMPs should be effective in addressing the quality of storm water discharges from the Facility.

c.　　PCEC shall ensure that the SWPPP includes procedures to track berm maintenance and includes specifics about training Facility staff on how to maintain and repair berms.

d.    A copy of the amended SWPPP shall be provided to EDC within thirty (30) days of completion and submittal to SMARTS.

7.    **Reports.**  During the term of this Consent Decree, PCEC shall send a courtesy email to EDC on or immediately following the date that PCEC uploads any documents to SMARTS, notifying EDC that such filing has been made.

## II.    MITIGATION, FEES, AND COSTS

8.    **Mitigation Payment**.  In recognition of the good faith efforts by PCEC to comply with all aspects of the Permit and the Clean Water Act at the Facility, and in lieu of payment by PCEC of any civil penalties under the Act, which may have been assessed in this action if it had been adjudicated adverse to PCEC, the Parties agree that PCEC will pay the sum of one hundred fifteen thousand dollars ($115,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants for watershed restoration projects in the San Antonio Creek, Orcutt Creek, and/or Santa Maria River watersheds.  Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little.  Payment shall be made by PCEC to the Rose Foundation within thirty (30) calendar days of the Effective Date.  PCEC shall copy EDC with any correspondence and a copy of the check sent to the Rose Foundation.  The Rose Foundation shall provide notice to the Settling Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

9.    **Reimbursement of Fees and Costs.**  PCEC shall reimburse EDC in the amount of one hundred eighty thousand dollars ($180,000.00) to help defray EDC's

reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to PCEC's attention, and negotiating a resolution of this action in the public interest. PCEC shall tender said payment, payable to "Environmental Defense Center," within thirty (30) days of the Effective Date.

10. **Compliance Monitoring Funds.** PCEC shall reimburse EDC for the costs of monitoring the terms of this Consent Decree in the amount of five thousand dollars ($5,000). Payment shall be made within thirty (30) days after the entry of this Consent Decree.

11. **Dispute Resolution.** If a dispute between the Parties under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. In resolving any dispute arising from this Consent Decree, the Court shall have

discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court. The District Court's award of any relief in a dispute brought pursuant to this paragraph shall be limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

## III. JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE

12. **Jurisdiction.** For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of California, Central District of California, has jurisdiction over the Parties and subject matter of this Consent Decree. The Parties stipulate that venue is appropriate in the Central District of California and that PCEC will not raise in the future as part of enforcement of this Consent Decree whether EDC has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein. The Parties further stipulate and respectfully request that the Court retain jurisdiction to oversee compliance with the terms of this Consent Decree, subject to the dispute resolution procedures specified in Paragraph 11 above. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994).

## IV. COMMITMENTS OF EDC

13. **Submission of Consent Decree to Federal Agencies.** Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, EDC shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA

for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

14.    If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

## V.    WAIVER, RELEASES AND COVENANTS NOT TO SUE

15.    In consideration of the payments that are to be made by PCEC above, and except as otherwise provided by this Consent Decree, EDC hereby covenants not to sue or to take administrative action against PCEC for any allegations and claims that were or could have been set forth in the 60-Day Notice Letter and Complaint for violations of the Clean Water Act, 33 U.S.C. §§ 1251-1387, at the Facility, and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted for violations of the Clean Water Act occurring up to and including the Termination Date of this Consent Decree.

16.    The Parties forever and fully release each other and their respective

parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from EDC's allegations and claims as were or could have been set forth in the 60-Day Notice Letter and Complaint for violations of the Clean Water Act at the Facility, and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted for violations of the Clean Water Act occurring up to and including the Termination Date of this Consent Decree.

17.    The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or released party.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for violations of the Clean Water Act at the Facility, and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted for violations of the Clean Water Act occurring up to and including the Termination Date of this Consent Decree.

18.    **No Admission.**  This Consent Decree is a settlement of disputed facts

and law. It is not an admission or adjudication regarding any allegations by EDC in this case or of any fact or conclusion of law related to those allegations. It is not evidence of any wrongdoing or misconduct on the part of PCEC. However, this Paragraph shall not diminish or otherwise affect the obligations, responsibilities, and duties of the Parties under this Consent Decree.

## VI.    MISCELLANEOUS PROVISIONS

19.    **Effective Date.**  The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

20.    **Term of Consent Decree.**   This Consent Decree shall terminate on December 31, 2020 or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to December 31, 2020 or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence.

21.    **Execution in Counterparts.**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

22.    **Facsimile Signatures.**  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

23.    **Construction.**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

24.    **Authority to Sign.**  The undersigned are authorized to execute this

Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

25.    **Integrated Consent Decree.**  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

26.    **Severability.**  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

27.    **Choice of Law.**  This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

28.    **Full Settlement.**  This Consent Decree constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

29.    **Negotiated Agreement.**  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

30.    **Modification of the Agreement.**  This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

31.    **Assignment.**  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent

Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

32. **Mailing of Documents to EDC/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to EDC pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via overnight mail/delivery service or certified U.S. Mail with return receipt, or by hand delivery to the following address:

EDC:

Maggie Hall
Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
E-mail: mhall@environmentaldefensecenter.org

With copies sent to:

Michael R. Lozeau
Lozeau Drury LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
E-mail: michael@lozeaudrury.com

Unless requested otherwise by PCEC, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to PCEC pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by overnight mail/delivery service or certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

PCEC:

Philip Brown
Pacific Coast Energy Company LP
1555 Orcutt Road
Orcutt, CA 93455
E-mail: Philip.Brown@pceclp.com

With copies sent to:

Ryan Waterman
Brownstein Hyatt Farber Schreck, LLP
225 Broadway, Suite 1670
San Diego, CA 92101
E-mail: rwaterman@bhfs.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

33. **Force Majeure.** A force majeure event is any event outside the reasonable control of PCEC that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that PCEC notifies EDC of the event; the steps that PCEC will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to storm water quality resulting from delay in completing the task.

PCEC will notify EDC of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence of the event. In such event, the time for performance of the task will be

extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

(i)     Acts of God, war, insurrection, or civil disturbance;

(ii)    Earthquakes, landslides, fire, floods;

(iii)   Actions or inactions of third parties over which PCEC has no control;

(iv)    Unusually adverse weather conditions;

(v)     Restraint by court order or order of public authority;

(vi)    Strikes; and

(vii)   Litigation, arbitration, or mediation that causes delay.

Force majeure events do not include normal inclement weather, economic hardship or inability to pay.

34.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

[SIGNATURES TO APPEAR ON THE FOLLOWING PAGE]

ENVIRONMENTAL DEFENSE CENTER

Date: 10-29 , 2019

_____
Judith Pirkowitsch
President, Board of Directors
Environmental Defense Center


PACIFIC COAST ENERGY COMPANY LP

Date: 10/29 , 2019

_____
Scott Wood
Chief Executive Officer

Approved as to form:

LOZEAU DRURY LLP

Date: October 30 , 2019

_____
Michael R. Lozeau
Attorneys for Environmental Defense Center


ENVIRONMENTAL DEFENSE CENTER

Date: October 30 , 2019

_____
Margaret Hall
Attorney for Environmental Defense Center

1    BROWNSTEIN HYATT FARBER SCHRECK, LLP

2        Date:  Oct. 29        , 2019

3

4        _____
         Ryan Waterman
5        Attorney for Pacific Coast Energy Company LP

6

7

8    APPROVED AND SO ORDERED, this ___ day of _____.

9

10

11       UNITED STATES DISTRICT JUDGE

12

13       _____
14       Hon. Consuelo B. Marshall

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**Regrading of mouth of Squires 34 well pad entrance**



# EXHIBIT B

**Location of proposed sampling point 14.b:**



